Nicholson, C. J.,
delivered, tbe opinion of tbe court:
Hodges & Hammond brought each a suit in trover against Apperson for tbe conversion of cotton. Tbe causes were consolidated and tried together, when, plaintiff recovered respectively, for tbe value of tbe cotton converted.
Tbe proof in tbe two causes tended to show that the cotton alleged to have been converted by Apperson was cotton assessed and collected in January, 1865, as "tax in bind,” by a tax. assessor and collector of tbe Confederate States, and sold under orders of tbe proper Confederate officers, to Apperson, either for himself, or bis agent of a firm in Memphis, Parhman, Brooks & Co. In view of the proof on this subject, the circuit judge instructed tbe jury as follows: “If tbe jury find -that tbe cotton in question was 'the tax in kind’' assessed by tbe Confederate authorities, and was given up to them by tbe plaintiffs under a mistaken opinion as to tbe legality of such tax, or their duty to deliver it, still they are not estopped from seeking to recover its value, for 'the tax in kind’ was not a legal tax, and cannot be recognized by tbis court, and though tbe plaintiffs at the time have supposed it legal, the act of taking it as such would still be a trespass, and tbe defendant would still be liable if engaged in it.” According to tins instruction, if tbe plaintiffs voluntarily delivered tbe cotton to tbe tax collector in, payment of their tax in kind, still tbe tax collector was guilty of trespass in receiving it, because the tax was illegal.
It is insisted for defendant that this instruction was erroneous, among other reasons, because tbe assessing and collecting taxes by tbe Confederate government was authorized as a proper exercise of military power in prosecuting tbe war then pending. We are of opinion that the assessment and collection of taxes were among tbe powers neces *613 sarily involved — concession of belligerent rights to the Confederate States. The manifest object in the collection of the tax was to aid in the successful prosecution of the war. It was a war measure of the most important character, and as such, under the law of belligerent rights, was a full protection to the officers who assessed and collected the tax. They could not be held responsible as trespassers, for thd legitimate exercise of this belligerent right. Nor could Apperson be guilty of a trespass in buying the cotton from the Confederate officers, from the simple fact that the cotton was “tax in kind,” and that this fact was known to him. Smith v. Brazelton [1 Heis., 44].
It is no answer to this position that the tax collector after collecting the tax on cotton, converted into money, unless it further appeared that it was so collected and converted and appropriated to his own purposes, and that Apperson bought with a knowledge of the fraud of the collector, whether, even in such case, the plaintiffs could take advantage of the fraud and maintain trover, we need not decide, inasmuch as the charge rests the liability of defendant upon the single proposition that the “tax in kind” was illegally collected and that defendant was alike liable if engaged in the illegal act of the collector.
If, on the contrary, the proof showed that the cotton was sold and the proceeds passed into the hands of the proper officer, there was no obligation resting on defendant to see that the officer did not misapply the money.
After the main charge was given to the jury, at the request of defendant’s counsel, the court further charged that “if the jury find from the evidence that the cotton in controversy was what is called ‘tax in kind’ of the Confederate States, and was delivered by the plaintiffs freely and voluntarily to the collector of the tax in kind for the so-called Confederate States, and delivered by him to defendant, or to any other person who delivered it to defendant, *614 as agents for Parkman, Brooks & Go., then plaintiffs would be estopped, and the jury should find for defendant.”
But, after giving tliis charge, the court proceeded to instruct the jury that this last instruction was “subject to the instructions aibove given, which the jury are first to follow and be governed by.”
It is obvious that the last instruction is irreconcilable with the first, and might have had the effect of counteracting the error in it but for the additional instruction that the jury were to be governed by the first instruction. This left the error in the first instruction in full force. Without noticing other questions discussed, we are of opinion that for the errors indicated, the judgment must be reversed.